IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:17-CV-179-FL

| DIPAK GIRI, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| INTEGRATED LABORATORY SYSTEMS, INC., | ) ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on defendant's motion for summary judgment (DE 42) as well as defendant's motion to maintain confidential designation (DE 48) and motion to seal document (DE 51). The matters have been fully briefed, and in this posture the issue raised are ripe for ruling. For the reasons that follow, the court grants defendant's motions.

## STATEMENT OF THE CASE

Plaintiff instituted this action by filing complaint on October 12, 2016, in the 412th District Court of Brazoria County, Texas, asserting a breach of contract claim as well as negligent misrepresentation and fraud-based claims, stemming from an alleged rescinded offer of employment made by defendant to plaintiff via letter dated September 18, 2014 ("employment offer letter"). (DE 43-1). Defendant removed this action on November 23, 2016, to the United States District Court for the Southern District of Texas.

On February 13, 2017, plaintiff filed first amended compliant, asserting the same claims as stated above, to which defendant, a North Carolina corporation, filed motion to dismiss for lack of

personal jurisdiction or in the alternative motion to transfer venue, which the court granted on April 12, 2017, transferring the case to this court.

On April 24, 2017, the court entered case management order, and on August 2, 2017, the court granted the parties' consent motion for protective order. Following grants of motions to amend the case management order, defendant filed the instant motion for summary judgment on April 25, 2018. In support, defendant has filed statement of material facts as well as the employment offer letter and plaintiff's letter in response, deposition excerpts from plaintiff, David Allen ("Allen"), Mary Mulleady ("Mulleady"), Bradley Blackard ("Blackard"), and Terry Adams ("Adams"), as well as affidavit of Adams, all of whom are employed by defendant with the exception of plaintiff. Defendant additionally relies upon select emails concerning the employment position in question.

On May 29, 2018, defendant also filed the instant motion for protective order and instant motion to seal document, relying on affidavit from Blackard in support.

Plaintiff filed opposition to both motions, and in support to his opposition to defendant's summary judgment motion, plaintiff relies on statement of material facts as well as declaration of plaintiff, award/contract between defendant and the National Institute of Environmental Health Sciences ("NIEHS") as well as the NIEHS statement of work, deposition and deposition excerpts from the same defendant employees as relied upon by defendant, select emails concerning the employment position in question, plaintiff's job searches and results for 2014-2015, and a document from defendant identifying plaintiff as "not best qualified" for job requisition number 1418.

**STATEMENT OF THE FACTS**

The relevant facts taken in light most favorable to plaintiff are summarized below.

In 2014, defendant was preparing a proposal ("NIEHS contract proposal") for the recompete of a NIEHS contract in which defendant would provide pathology support services to NIEHS (the "NIEHS contract").

As part of creating a competitive contract proposal, defendant sought to demonstrate to NIEHS the availability and interest of qualified candidates who could assist defendant in servicing the NIEHS contract. Accordingly, in September of 2014, Allen, defendant's vice president of science and strategy, reached out to plaintiff to inquire as to his availability and interest in staffing the NIEHS contract. Allen reached out to plaintiff because he had previously been employed by defendant and generally had the skills necessary to service the NIEHS contract as it was being bid in the Fall of 2014.

During plaintiff's prior employment with defendant, like all defendant employees servicing a NIEHS contract, plaintiff had been an at-will employee and was required to work on-site at defendant's facilities in the Research Triangle Park. Plaintiff expressed interest and stated he was available. In order to memorialize plaintiff's interest, defendant sent plaintiff the employment offer letter dated September 18, 2014, which states as follows:

> I am pleased to offer you the full time position of Toxicologic Pathologist with Integrated Laboratory Systems, Inc. (ILS) at the hourly rate of $75.56 with a start date of July 15, 2015. This offer is contingent upon ILS being awarded the Pathology Peer Review and Pathology Support for the Divisions of the National Toxicology Program (DNTP) and the Division of Intramural Research (DIR) at the National Institute for Environmental Health Sciences (NIEHS) contract and a determination that an opening for this position exists; your willingness to sign the Confidentiality and Work Ownership Agreement; and your successful completion of a drug test and criminal background check . . . . We look forward to your acceptance of our offer. If you find this offer to be acceptable, please sign and return the enclosed letter.

(Employment Offer Letter (DE 43-1)).

3

On September 23, 2014, plaintiff accepted the contingent offer "in accordance with the terms" of the employment letter. During this time, from mid-2014 to mid-2015, plaintiff applied to nine other pathologist positions and received rejection notices or no responses between August 2014 and July 10, 2015. These employment positions were located both domestic and abroad.

Defendant submitted its proposal for the NIEHS contract on October 8, 2014, and as part of its proposal, defendant included the names of pathologists that were available to defendant. Plaintiff's name was included in that proposal as a staff pathologist. In addition to plaintiff, defendant included the names of two other pathologists who received identical "contingent offer" letters in the fall of 2014, neither of whom were actually hired after the NIEHS contract was awarded.

In July 2015, defendant was awarded the NIEHS contract, and an opening for a pathologist position was available. Adams, defendant's toxicologist pathologist and pathology program manager, was involved in staffing a pathologist to work on the NIEHS contract. Adams recruited and hired Rebecca Moore ("Moore") from a competitor of defendant for the pathologist position.[1] Plaintiff alleges he had the skill set and background needed in order to fulfill whatever requirement

---

[1] The parties dispute what specific pathologist position was available following the award of the NIEHS contract. Plaintiff alleges that "[t]here was no change in the relevant requirements" under the NIEHS contract, citing the "statement of work" provided by NIEHS in August 2014 which referenced the following technical requirements: pathology data review, audit of pathology specimens, pathology quality assessment, and pathology peer review. (See DE 57 ¶¶ 35, 45; DE 57-7 at 5-7). Defendant, however, alleges that after the original proposal for the NIEHS contract was submitted, the requirements of the contract changed, and defendant "would be required to provide Audit of Pathological Specimens process and Pathology Data Review process." (DE 44-6 ¶¶ 12-13; see also DE 44-5 at 18:4-6 (Adams testifying that under the contract "we were required to do what was call[ed] an audit of pathology specimen process as well as what we call a pathology data review process")). Adams states that "[a]s a result of this change, the general pathologist position that was contingently offered to Dr. Giri no longer existed," and "[a]ccordingly, I recruited and hired another pathologist, Dr. Rebecca Moore, who had experience in these processes." (DE 44-6 ¶¶ 15, 17).

4

was needed for the NIEHS contract.[2]

While defendant was finalizing its staffing decisions, plaintiff sent multiple e-mails to defendant, inquiring of the status of the position and whether defendant had made a "decision." Specifically, on July 31, 2015, plaintiff emailed defendant to inquire "if there is any decision for the contingency offer given to me last year . . . ." (DE 44-7 at 6). As defendant was still in discussions with Moore, defendant responded that "[t]o date, we have not made any decisions." (Id.). On August 31, 2015 and September 9, 2015, plaintiff again emailed defendant to ask defendant to "let [him] know of a decision" regarding employment under the NIEHS Contract. (Id. at 3-4; DE 57-4). Adams responded on September 11, 2015 stating that defendant was in the final stages of finalizing staffing decisions and decisions would be made within the next two weeks. Moore accepted the offer of employment on September 8, 2015.    On September 24, 2015, Adams notified plaintiff that he would not be hired to work on the NIEHS contract.

## DISCUSSION

A.    Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317,

---

[2] Plaintiff has submitted declaration stating that although Adams has asserted plaintiff was not qualified, he has a "lot of experience in pathology data review" and that "[t]his was a major job of mine when I previously worked for ILS," noting a paper he published as part of a team on this subject. (DE 57-11 ¶ 7). Defendant disputes this assertion, with Adams testifying that defendant, including plaintiff, had no experience performing an "audit of pathology specimens process" and a "pathology data review process." (DE 44-5 at 18:4-7).

5

323 (1986).

Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." <u>Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986) (internal quotation omitted). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." <u>Id.</u> at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." <u>Id.</u> at 255; <u>see</u> <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." <u>Lovelace v. Sherwin-Williams Co.</u>, 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." <u>Myrick v. Prime Ins. Syndicate, Inc.</u>, 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one

reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489-90.

B.    Analysis

    1.    Motion for Summary Judgment

        a.    Applicable Law

Before turning to the substance of defendant's motion, it is necessary to address the law applicable to this case. The parties offer divergent theories on the matter, with plaintiff contending that because plaintiff was located in Texas during the alleged torts committed by defendant, Texas law should apply to those claims.[3]

A federal district court sitting in diversity must apply the choice-of-law rules of the forum state. Kalxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496–97 (1941). In tort actions, North Carolina courts apply the rule of lex loci delicti commissi ("lex loci"), or the law of the place where the wrong was committed, to determine the applicable substantive law. Boudreau v.. Baughman, 322 N.C. 331, 335 (1988); see also Harco Nat'l Ins. Co. v. Grant Thornton LLP, 206 N.C.App. 687 (2010). This approach was adopted from the Restatement of Conflict of Laws ("First Restatement"). See Charnock v. Taylor, 223 N.C. 360, 362 (1943); see generally Restatement (First), Conflict of Laws, § 378.

The North Carolina Supreme Court has not had the opportunity to apply lex loci to fraud-based or negligent misrepresentation claims resulting in loss of employment. Accordingly, as a

---

[3] The parties do not dispute that North Carolina law governs plaintiff's breach of contract claim. Here, where the alleged contract dealt with employment in North Carolina, would have been fulfilled in North Carolina, and only has a tangential relationship to Texas and where plaintiff does not dispute defendant's position that North Carolina law should apply, the court will apply North Carolina law. See Fortune Ins. Co. v. Owens, 351 N.C. 424, 428 (2000) (applying the law of the place where the contract was formed in insurance dispute).

court sitting in diversity, this court must predict how the North Carolina Supreme Court would rule on this matter. Wells v. Liddy, 186 F.3d 505, 527–28 (4th Cir.1999); Liberty Mut. Ins. Co v. Triangle Indus., 957 F.2d 1153, 1156 (4th Cir.1992) (holding that where state law is unclear federal courts must predict the decision of the state's highest court).

North Carolina courts have evidenced a "strong adherence to the traditional application of the [lex loci] doctrine when choice of law issues arise." Mosqueda v. Mosqueda, 218 N.C.App. 142, 150 (2012) (citing Gbye v. Gbye, 130 N.C.App. 585, 587 (1998)), disc. rev. denied 724 S.E.2d 919 (N.C.2012). Thus, the court predicts, as the court has previously, that the North Carolina Supreme Court would continue its reliance on the First Restatement. See, e.g., Nobles v. Boyd, No. 7:14-CV-214-FL, 2015 WL 2165962, at *4 (E.D.N.C. May 8, 2015); Hensley v. Nat'l Freight Transp., Inc.,193 N.C.App. 561, 563 (2008) ("The law of the place where the injury occurs controls tort claims."), aff'd 363 N.C. 255 (2009) (per curiam).

Applying the First Restatement, the court holds that North Carolina courts would apply the law of the state of North Carolina. According to the First Restatement, the court applies the law of the forum where the wrong occurred. "The place of the wrong is in the state where the last event necessary to make an actor liable for an alleged tort takes place." Restatement (First), supra, § 377. "When a person sustains loss by fraud, the place of wrong is where the loss is sustained, not where fraudulent representations are made." Id. n.4. Here, the loss sustained was in North Carolina where plaintiff's alleged employment was to have occurred. Although plaintiff argues this result is incorrect in that he was physically in Texas during the events in question, no loss to plaintiff occurred in Texas. A cause of action for fraud or negligent misrepresentation does not arise until loss is suffered, and North Carolina courts would hold the cause of action accrues where the loss is

8

suffered. See Harco, 206 N.C. App. at 698 ("Plaintiff's funds were clearly located in North Carolina at the time they were seized and, as a result, we hold that plaintiff suffered the injury necessary to give rise to its negligence and negligent misrepresentation claims in North Carolina. Therefore, North Carolina law governs plaintiff's claims under the lex loci test."). Thus, the court will apply North Carolina law to plaintiff's tort claims.[4]

        b.        Breach of Contract Claim

Under North Carolina law, a claim for breach of contract requires a plaintiff to show "the existence of a contract between plaintiff and defendant, the specific provisions breached, [t]he facts constituting the breach, and . . . damages resulting to plaintiff from such breach." Cantrell v. Woodhill Enterprises, Inc., 273 N.C. 490, 497 (1968).

Here, plaintiff's claim for breach of contract fails because the employment offer letter did not specify a definite period of employment, thus did not constitute a promise of employment, and, even assuming contract and breach, did not result in damages.

First, North Carolina is an at-will employment state. Kurtzman v. Applied Analytical Indus., Inc., 347 N.C. 329, 331 (1997); see also Knight v. Vernon, 214 F.3d 544, 553 (4th Cir. 2000) (citing Kurtzman). The North Carolina Supreme Court has "repeatedly held that in the absence of a contractual agreement between an employer and an employee establishing a definite term of employment, the relationship is presumed to be terminable at the will of either party without regard to the quality of performance of either party." Kurtzman, 347 N.C. at 331; see also Food Lion, Inc. v. Capital Cities/ABC, Inc., 194 F.3d 505, 513 (4th Cir. 1999) ("North and South Carolina are at-will employment states, and under the at-will doctrine it is unreasonable for either the employer

---

[4] Defendant provides the court, as relevant to each of plaintiff's claims, the Texas law at issue, which does not differ from North Carolina law in any relevant material respects.

or the employee to rely on any assumptions about the duration of employment. At-will employment means that (absent an express agreement) employers are free to discharge employees at any time for any reason, and employees are free to quit.").[5]

Plaintiff argues that because the employment offer letter did not specifically state the employment was at-will, plaintiff "did not believe the offer was for an at-will employment situation" and "it was reasonable to expect that the employment would be tied to the length of the NIEHS-ILS contract." (DE 58 at 3-4). However, plaintiff offers no support in North Carolina law for his position nor is the court aware of any. The employment offer letter states only that defendant was "pleased to offer you the full time position of Toxicologic Pathologist with Integrated Laboratory Systems, Inc. (ILS) at the hourly rate of $75.56 with a start date of July 15, 2015." (Employment Offer Letter (DE 43-1)). No mention is made of length of employment nor end date of employment. Additionally, plaintiff acknowledged in deposition that had he been hired, he could have been fired at anytime. (See DE 44-1 at 150:16-20).[6]

The North Carolina Supreme Court has held that the measure of damages recoverable for breach of an employment contract is "the actual loss or damage sustained on account of the breach. The maximum amount recoverable would be the difference, if any, between the agreed compensation and the amount plaintiff earned or by reasonable effort could earn during the contract period." Thomas v. Catawba College, 248 N.C. 609, 615 (1958) (citations omitted). However,

---

[5] Kurtzman details limited exceptions not at issue here including "discharging employees based on impermissible considerations such as the employee's age, race, sex, religion, national origin, or disability, or in retaliation for filing certain claims against the employer." 347 N.C. at 331.

[6] Because the potential employment at issue was at-will, the employment offer letter is also not a contract supported by consideration. See Kurtzman, 347 N.C. at 333-34 (holding no consideration supports an at-will employment contract and "that plaintiff-employee's change of residence in the wake of defendant-employer's statements here does not constitute additional consideration making what is otherwise an at-will employment relationship one that can be terminated by the employer only for cause").

because an at-will employee may be terminated at any time and has no future expectation of employment, an at-will employee suffers no damages when they are terminated, unless they were terminated for illegal reasons. See Coman v. Thomas Mfg. Co., 325 N.C. 172, 175 (1989) ("Ordinarily, an employee without a definite term of employment is an employee at will and may be discharged without reason."); see also Bennett v. E. Rebuilders, Inc., 52 N.C. App. 579, 583 (1981) ("As an employee at will she was entitled to no specific period of employment . . . . Her damages were thus coextensive with her entitlement to continued employment as a lead person; that is, none at all."). The court therefore grants defendant's motion regarding plaintiff's breach of contract claim.

      c.    Tort Claims

Under North Carolina law, the elements of fraud are: "(1) False representation or concealment of a material fact, (2) reasonably calculated to deceive (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." Ragsdale v. Kennedy, 286 N.C. 130, 138 (1974); see Rowan Cty. Bd. of Educ. v. U.S. Gypsum Co., 332 N.C. 1, 17 (1992) (characterizing the fourth element as "reliance"). "The tort of negligent misrepresentation occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." Raritan River Steel Co. v. Cherry, Bekaert & Holland, 322 N.C. 200, 206 (1988) (citations omitted). With regard to either a fraud-based or a negligent misrepresentation claim, "any reliance on the allegedly false representations must be reasonable," and whether a party's reliance is justified is generally a question for the jury, except in instances in which "'the facts are so clear as to permit only one conclusion.'" Forbis v. Neal, 361 N.C. 519, 527 (2007).

The only false representation potentially at issue in the employment offer letter is defendant's statement that the offer of employment was contingent on "a determination that an opening for this position exists." (Employment Offer Letter (DE 43-1)). As stated above, the parties dispute whether or not an opening for the position that was the subject of the employment offer letter did in fact exist following the defendant's submission of its original proposal for the NIEHS contract. Even taking facts in light most favorable to plaintiff, however, and assuming the position did exist unaltered, plaintiff's fraud-based and negligent misrepresentation claims fail because there is no triable issue of fact as to whether plaintiff relied to plaintiff's detriment on any allegedly false representation made by defendant.

Applicable to all of plaintiff's claims, plaintiff argues he "suffered damages in two ways: a) by not receiving the income he would have obtained had he started working for ILS, and b) by not receiving income from alternate employment or contractual work had he known that ILS was not going to hire him . . . ." (DE 58 at 4, 6). However, plaintiff was not entitled to any compensation had he become employed by defendant, as stated above. Additionally, plaintiff has put forth no evidence of lost potential alternative employment or work opportunities, arguing only in declaration submitted to the court that he "would have taken more aggressive steps to find another job or to work more on pursuing contractual work," (DE 57-11 ¶ 4), although he "applied to nine other positions in approximately mid-2014 to mid-2015," (DE 57 ¶ 60). Such an argument is "speculation and conjecture." Lovelace, 681 F.2d at 241.

The court additionally recognizes that plaintiff's declaration contradicts his previously provided deposition testimony:

> Q: … What, if anything, did you do because you believed you were going to be hired or what didn't you do? Was there something you did or didn't do in reliance on this

representation?

A: I did not do anything.

(DE 44-1 at 145:13-17); see also Barwick v. Celotex Corp., 736 F.2d 946, 960 (4th Cir. 1984) ("If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact."); id. at 960 ("A genuine issue of material fact is not created where the only issue of fact is to determine which of two conflicting versions of the plaintiff's testimony is correct.").[7]

Plaintiff testified he did nothing in response to the offer letter and has offered no evidence of damages except speculation and conjecture. Such arguments fail to created a triable issue of fact. See Olivetti Corp. v. Ames Bus. Sys., Inc., 319 N.C. 534, 546 (1987) (vacating award of damages and holding plaintiff bears the burden of demonstrating damages due to misrepresentation to a reasonable certainty including alleged damage of lost opportunity).

Regarding plaintiff's fraud claims, plaintiff has additionally failed to put forth any evidence that defendant's employment offer letter was made with the intent to deceive.

Plaintiff argues that "ILS knew these representations were false [, that defendant would hire plaintiff,] because, on the same day that it submitted its contract proposal to NIEHS (October 8, 2014), it internally considered Giri not best qualified for the job but never informed him of the change." (DE 58 at 6; see also DE 57 ¶ 54 (plaintiff alleging defendant "internally changed Giri's

---

[7] Plaintiff additionally claims in declaration that even if he had obtained a job between September 2014 and July 2015, he would have left that job as he "wanted to work for ILS." (DE 57-11 ¶ 4). However, this declaration is also at odds with plaintiff's deposition testimony. When asked whether he would have quit a position he applied for in October 2014 had he both been offered that job and been formally offered the position at issue, plaintiff stated that "I – I don't know. That – That depends on [sic] situation." (DE 44-1at 113:9-10).

13

status as 'not best qualified,' suggesting it was not going to hire" plaintiff.)). In support plaintiff cites to a document from defendant identifying plaintiff as "not best qualified" for job requisition number 1418 as of October 8, 2014. (DE 57-10).

However, as seen on the document in question, plaintiff applied for position 1418 on June 12, 2014, and the undisputed evidence of record is that plaintiff was not contacted about the employment position in question until September 2014. (DE 44 ¶ 4; DE 57 ¶ 4). Additionally, Blackard, defendant's vice president of business management, testified position 1418 is not the same as the employment position currently at issue:

> Q: What is Exhibit 22?
>
> A: Exhibit 22 is the output from our BALANCEtrak Applicant Management System, which shows the people that applied for the senior toxicologic pathologist program manager back in 2014.
>
> ****
>
> Q: Just for clarification, going back to Exhibit Number 22, for position 1418, the one that Dr. Allen got – sorry, the one that Dr. Adams got, do you know if Dr. Giri was ever actually offered the job that Dr. Adams actually ended up getting?
>
> A: No, he was not offered that job.

(DE 57-8 at 27:6-10, 37:15-20). Even taking facts in light most favorable to plaintiff, this evidence is unrelated to the current litigation.

Accordingly, the court grants defendant's motion regarding plaintiff's fraud-based and negligent misrepresentation claims.

2.  Motion for to Maintain Confidential Designation and Motion to Seal

Pursuant to Federal Rule of Civil Procedure 26(c), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden

or expense, including one or more of the following: . . . requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed.R.Civ.P. 26(c)(1). "To establish good cause for a protective order under Federal Rule of Civil Procedure 26(c), . . . courts have insisted on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." Gulf Oil Co. v. Bernard, 452 U.S. 89, 102, n. 16 (1981) (citation omitted). "Such demonstrations are preferably made by affidavits from knowledgeable persons and may include in camera submissions or in camera proceedings attended by opposing counsel." Brittain v. Stroh Brewery Co., 136 F.R.D. 408, 412–13 (M.D.N.C. 1991) (citing Reliance Ins. Co. v. Barron's, 428 F.Supp. 200, 203 (S.D.N.Y.1977)). In evaluating a motion to seal, in accordance with the mandatory procedure outlined by the Fourth Circuit in Stone v. University of Maryland, 855 F.2d 178 (4th Cir. 1988), the court must first "determine [whether] the source of [the public's] right of access . . . is based on the common law or the First Amendment" with respect to each document to be sealed. Id. at 180. This is because "different levels of protection may attach to the various records and documents involved in [a] case." Id. "The common law presumes a right to inspect and copy [all] judicial records and documents," and this presumption "may be overcome if competing interests outweigh the interest in access." Id. (citing Nixon v. Warner Communications, Inc., 435 U.S. 589, 597 (1978); Rushford v. The New Yorker Magazine, Inc., 846 F.2d 249, 253 (4th Cir. 1988); In re Washington Post Co., 807 F.2d 383, 390 (4th Cir. 1986)). Here, common law right of access applies where defendant only seeks to seal documents in relation to a discovery motion. See Rushford, 846 F.2d at 252; see also In re Policy Mgmt. Sys. Corp., Nos. 94-2254, 94-2341, 1995 WL 54162323 (4th Cir. Sept. 13, 1995).

In the course of discovery, the parties entered into a consent protective order governing the exchange of documents in discovery. (DE 35). Specifically, the consent protective order governs "confidential information," which is defined as including "trade secrets or other propriety, technical, financial, or confidential information (including but not limited to research, commercial, financial, or business information)." (Id. ¶ 2) Pursuant to the mechanisms of the consent protective order, defendant designated its NIEHS contract proposal confidential and subject to protective order and produced the proposal to plaintiff. Defendant seeks the court to maintain under confidential designation the NIEHS contract proposal and has filed the proposal with accompanying motion to seal "for the limited purpose of allowing the Court to review the documents to determine the merits of ILS's Motion to Maintain Confidential Designation filed contemporaneously in this matter." (DE 52 at 1).

Defendant provides affidavit of Blackard, who oversaw the work performed for submission of the proposal at issue, who states in relevant part that 1) the proposal was submitted to NIEHS under the terms of a "Restriction on Disclosure and Use of Data" agreement whereby NIEHS agreed to not disclose the contents, 2) defendant restricts access to the proposal within the company and no person or entity outside of defendant has access, 3) employees are subject to a confidentiality and work ownership agreement, and, 4) regarding what the proposal contains:

> The NIEHS Contract Proposal contains numerous categories of sensitive information, including ILS's approach to project management and coordination; overall management approach; method of assigning work internally; method of monitoring progress of work, including how ILS integrates complex work assignments into concurrent work flow and tracks financial accountability; staff retention; detailed description of proposed staff history and how that staff member would service the proposed contract; detailed description of peer review processes; data sharing; and general business strategies. The NIEHS Contract Proposal also includes sensitive financial information related to the costs ILS would charge NIEHS. The NIEHS Contract Proposal is also a unique document that constitutes

>ILS's unique approach to bidding for government contracts with the NIEHS or any other federal agency.

(DE 49-1 ¶¶ 11-13). Blackard additionally states that the "NIEHS Contract Proposal is the product of hundreds of man hours and contains information that has been developed over many years of operation," and disclosure of the proposal "would allow ILS's competitors to mimic, strategically counter, or improve upon ILS's bidding strategies." (Id. ¶¶ 15, 19).

Plaintiff challenges the confidential designation and opposes defendant's motion to maintain as confidential defendant's NIEHS contract proposal, arguing first that the proposal was submitted to the NIEHS and thus is subject to the Freedom of Information Act ("FOIA"), and that defendant has not provided admissible evidence to indicate that defendant's proposal is exempt under FOIA.[8] However, plaintiff offers no argument or law that defendant's position, that the proposal is exempt form FOIA, is incorrect nor why the court is unable to consider defendant's affidavit submitted by Blackard, who states he has "personal knowledge of the matters set forth herein," (id. ¶ 2), to determine whether or not defendant has "establish[ed] good cause for a protective order." See Gulf Oil Co., 452 U.S. at 89, 102, n. 16; Brittain., 136 F.R.D. at 412–13; Reliance Ins., 428 F.Supp. at 203.

Plaintiff next argues that the information provided in the proposal concerns what NIEHS pays to defendant, not defendant's sensitive financial information, the latter of which is publically available, citing online sources that state that ultimate value of the NIEHS contract as well as dates and payments/options exercised on those dates related to the contract. This argument, however, that payment information is publically available concerning the 397-page proposal that eventually

---

[8] The relevant FOIA exemption statute, 5 U.S.C. § 552(b)(4), states "[t]his section does not apply to matters that are . . . .(4) trade secrets and commercial or financial information obtained from a person and privileged or confidential."

became a contract, (see DE 50), misses defendant's main argument that "the NIEHS Contract Proposal constitutes a unique piece of work-product submitted to NIEHS, under the protection of a 'Restriction on Disclosure and Use of Data' agreement between ILS and NIEHS, that constitutes the sole document based upon which NIEHS forms its decision to award the contract." (DE 49 at 3); see also First Health Group Corp. v. National Prescription Adm'rs, Inc., 155 F. Supp. 2d 194, 227 (M.D. Pa. 2001) ("[Bidder's] unique method of bidding to manage [certain human resources tasks] were trade secrets …"); Inflight Newspapers, Inc. v. Magazines In-Flight, LLC, 990 F. Supp. 119, 126 (E.D.N.Y. 1997) (holding that terms of customer proposals are trade secrets under multi-factor test stated in Restatements of Torts).

Finally, the court rejects plaintiff's final argument, that defendant has waived confidentiality by including information concerning the proposal not under seal in its motion for summary judgment and memo in support. That defendant references in general terms the proposal, such as stating that defendant "included the names of pathologists that were available to ILS" and that plaintiff was "merely listed as a proposed staff member," "was the second to the last pathologist listed," and "ILS included names of two other pathologists," (DE 43 at 5), does not equate to defendant waiving confidentiality in the contents of the proposal at issue.

Defendant has met its burden of demonstrating, with specific facts, the need for a protective order; the public's interest in access to defendant's NIEHS contract proposal is sufficiently outweighed by competing interests. Accordingly, the court grants defendant's motions to maintain confidential designation and to seal. Finally, where the court has not disclosed herein information

subject to sealing in accordance with the foregoing, the instant order shall not be filed under seal.[9]

## CONCLUSION

Based on the foregoing, defendant's motion for summary judgment (DE 42) is GRANTED Plaintiff's claims are DISMISSED. Defendant's motion to maintain confidential designation (DE 48) is GRANTED. Defendant's motion to seal (DE 51) is GRANTED. As set forth herein, defendant's NIEHS contract proposal (DE 50) shall remain under seal. The court has determined that this order shall be filed in its entirety without sealing any portion thereof, even though it references materials provisionally filed under seal. The clerk is DIRECTED to close this case.

SO ORDERED, this the 7th day of February, 2019.

_____
LOUISE W. FLANAGAN
United States District Judge

---

[9] In light of the court's holding above, it is unnecessary to address defendant's argument that even if the NIEHS contract proposal does not constitute a trade secret, it constitutes confidential commercial information that is protected by Rule 26(c)(1)(g).